## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, 1800 Massachusetts Ave, Suite 301 Washington, D.C. 20036, <br><br> and <br><br> BOARD OF TRUSTEES OF THE SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND, 1800 Massachusetts Ave, Suite 301 Washington, D.C. 20036, <br><br>                             Plaintiffs, <br><br> v. <br><br> AAKASH, INC., d/b/a Park Central Care and Rehabilitation Center 540 West Monte Vista Avenue Vacaville, CA  95688 <br><br> KAYAL, INC., d/b/a Bay Point Care and Rehabilitation Center 422 Sunset Boulevard Hayward, CA  94541 <br><br> NADHI, INC., d/b/a Gateway Care and Rehabilitation Center 540 West Monte Vista Avenue Vacaville, CA  95688 <br><br> SAGAR, INC. d/b/a La Mariposa Care and Rehabilitation Center 540 West Monte Vista Avenue Vacaville, CA  95688 <br>                             Defendants. | Case No: 1:20-cv-956 <br><br><br> **Additional Required Service under 29 U.S.C. § 1132(h) to:** <br><br> **U.S. Department of Labor** <br> **Attn: Assistant Solicitor** <br> **   for Plan Benefits Security** <br> **200 Constitution Ave., N.W.** <br> **Washington, DC 20002** <br><br> **U.S. Department of Treasury** <br> **Attn: Secretary of the Treasury** <br> **1500 Pennsylvania Avenue, NW** <br> **Washington, D.C. 20220** |

## COMPLAINT UNDER ERISA FOR DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, REMITTANCE REPORTS, AUDIT FEES, ATTORNEY'S FEES AND COSTS

## Introduction, Jurisdiction and Venue

1.      This is a civil action brought by an employee benefit plan, and by the Trustees of an employee benefit plan, pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2) and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(a) to collect unpaid collectively bargained contributions, interest, liquidated damages, audit fees, and attorneys' fees and costs owed by the Defendants.

2.      Jurisdiction is conferred upon this Court for delinquent benefit fund contributions and for violation of a collective bargaining agreement by Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e) and (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3.      Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as the Service Employees International Union National Industry Pension Fund is administered in this District.

4.      Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail on or about the date of filing.

## Parties

5.      Plaintiff Service Employees International Union National Industry Pension Fund ("SEIU Pension Fund") is an employee pension benefit plan within the meaning of Sections 3(2), (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The SEIU Pension Fund is and at all times

material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The SEIU Pension Fund is administered at 1800 Massachusetts Avenue NW, Suite 301, Washington, DC 20036.

6.     Plaintiff Trustees of the SEIU Pension Fund, Arun Ivatury, Roderick S. Bashir, Christopher Bouvier, Thomas LaMartina, Edward J. Manko, John J. Sheridan, Frank A. Maxson, Laphonza Butler, David Huerta, and Emanuel Pastreich are the duly authorized Trustees of the SEIU Pension Fund whose duty it is to administer the SEIU Pension Fund for the benefit of the participants and beneficiaries of the SEIU Pension Fund. Plaintiff Trustees are fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are authorized and empowered to maintain this action.

7.     Defendant AAKASH, Inc. ("AAKASH") is an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), and (12), and Sections 2(2), (6), and (7) of the LMRA, 29 U.S.C. §§ 152(2), (6), and (7).

8.     Defendant AAKASH does business as Park Central Care and Rehabilitation Center. Upon information and belief, Defendant AAKASH is a corporation incorporated in the State of California, with a mailing address of 540 West Monte Vista Avenue, Vacaville, CA  95688.

9.     Defendant KAYAL, Inc. ("KAYAL") is an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), and (12), and Sections 2(2), (6), and (7) of the LMRA, 29 U.S.C. §§ 152(2), (6), and (7).

10.     Defendant KAYAL does business as Bay Point Care and Rehabilitation Center. Upon information and belief, Defendant KAYAL is a corporation incorporated in the State of California, with a mailing address of 442 Sunset Boulevard, Hayward, CA  94541.

11.     Defendant NADHI, Inc. ("NADHI") is an "employer in an industry affecting

3

commerce" as defined in Sections 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), and (12), and Sections 2(2), (6), and (7) of the LMRA, 29 U.S.C. §§ 152(2), (6), and (7).

12.     Defendant NADHI does business as Gateway Care and Rehabilitation Center. Upon information and belief, Defendant NADHI is a corporation incorporated in the State of California, with a mailing address of 540 West Monte Vista Avenue, Vacaville, CA  95688.

13.     Defendant SAGAR, Inc. ("SAGAR") is an "employer in an industry affecting commerce" as defined in Sections 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), and (12), and Sections 2(2), (6), and (7) of the LMRA, 29 U.S.C. §§ 152(2), (6), and (7).

14.     Defendant SAGAR does business as La Mariposa Care and Rehabilitation Center. Upon information and belief, Defendant SAGAR is a corporation incorporated in the State of California, with a mailing address of 540 West Monte Vista Avenue, Vacaville, CA  95688.

15.     Upon information and belief, the Defendants share an interrelation of operations, common management, centralized control of labor relations, and common ownership. Specifically, upon information and belief:

        a.      three of the Defendants (NADHI, SAGAR and AAKASH) share an identical street address;

        b.      the Defendants collectively negotiated and executed the relevant collective-bargaining agreement, in which they are collectively referred to as "the Employer" or "the Hospital" in that contract agreement;

        c.      the relevant collective-bargaining agreement was executed on behalf of all Defendants by Prema Thekkek, the owner and Vice President of Defendants;

        d.      Bobby Singh serves as the Regional Director of Operations of all Defendants;

4

e.     Antony Thekkek serves as the registered agent of all Defendants;

f.     Defendants have previously employed the same attorney to represent them in dealings with the SEIU Pension Fund;

g.     Defendants have previously entered into a joint Settlement Agreement with the SEIU Pension Fund; and

h.     Defendants employ the same classification or similar classifications of employees and perform the same type of work.

16.     As a result, the Defendants are "alter egos" and should be treated as a single employer and are jointly and severally liable for each other's debts.

## Factual Background

17.     At all relevant times, SEIU United Healthcare Workers - West ("the Union") has been the exclusive bargaining representative for all bargaining unit employees working for AAKASH, NADHI, SAGAR, and KAYAL.

18.     The Defendants were each a party to a collective bargaining agreement ("CBA" or "Agreement") with the Union for its employees working at Gateway Care and Rehabilitation Center, La Mariposa Care and Rehabilitation Center, Park Central Care and Rehabilitation Center and Bay Point Care and Rehabilitation Center, which was initially effective for the period of June 16, 2006 through June 15, 2008 ("2006 CBA"). A true and complete copy of the 2006 CBA is attached as Plaintiffs' Exhibit 1.  Pursuant to Section 38 of the 2006 CBA, the Agreement remained in full force and effect after June 16, 2008, from year to year thereafter, unless amended by mutual written agreement of the bargaining parties. *See* Ex. 1, Sec. 38. Upon information and belief, the bargaining parties did not give written notice of a mutual agreement to terminate or amend the Agreement and the CBA remained in full force and effect until a successor agreement was

executed effective for the period of October 1, 2015 through October 1, 2018 ("2015 CBA").  Ex. 1, Sec. 38. A true and complete copy of the 2015 CBA is attached as Plaintiffs' Exhibit 2.  Pursuant to Section 38 of the 2015 CBA, the Agreement remained in full force and effect after October 1, 2018, from year to year thereafter, unless amended by mutual written agreement of the bargaining parties. Ex. 2, Sec. 38. Upon information and belief, the bargaining parties have not given written notice of a mutual agreement to terminate or amend the Agreement.  Therefore, the 2015 CBA remains in full force and effect.  Ex. 2, Sec. 38.

19.     Pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, employers who are obligated to make contributions to a multi-employer employee benefit plan must do so in accordance with the terms of the applicable collective bargaining agreement. Here, both the 2006 and 2015 CBAs state that the Defendants are obligated to remit contributions to the SEIU Pension Fund per compensated hour for every full-time covered employee that has completed 90 days of employment and for all temporary or casual covered employees, who have worked, or been compensated for, one thousand (1,000) hours or more during any twelve-month period. Exs. 1 & 2, Sec. 26.

20.     Pursuant to Section 26 of the CBAs, commencing on January 1, 2007, Defendants were required to contribute to the Fund in the amount of $0.15 (fifteen cents) per compensated hour for all eligible employees covered by the Agreement.  Commencing on January 1, 2008, Defendants were required to contribute to the Fund in the amount of $0.20 (twenty cents) per compensated hour for all eligible employees covered by the Agreement.  The $0.20 (twenty cent) per hour rate remains in effect. Exs. 1 & 2, Sec. 26.

21.     Pursuant to Section 26.4 of the Agreements and by submitting reports and contributions, Defendants agreed to be bound by the SEIU Pension Fund's Agreement and

Declaration of Trust ("Trust Agreement"). The CBAs state that "[t]he Employer hereby agrees to be bound by the provisions of the Agreement and Declaration of Trust establishing the Fund, as it may, from time to time, be amended, and by all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that Agreement, including collection policies, receipt of which is hereby acknowledged. A true and complete copy of the Trust Agreement is attached as Plaintiffs' Exhibit 3.   Pursuant to Section 3.1 of the Trust Agreement, the Trustees are empowered to create and enforce a collection policy for the assessment of unpaid and delinquent contributions. Ex. 3, Section 3.1. Accordingly, Defendants are obligated to remit contributions to the SEIU Pension Fund in accordance with the collection policies adopted by the Trustees. A true and correct copy of the Statement of Policy for Collection of Delinquent Contributions ("Collection Policy") is attached as Plaintiffs' Exhibit 4.

22.    The CBAs also state that "[c]ontributions shall be transmitted together with a remittance report containing such information, in such manner, and on such form as may be required by the Trustees of the Fund or their designee." Exs. 1 & 2, Sec. 26.3. At all relevant times, Section 3.1 of the SEIU Pension Fund's Trust Agreement has also provided that an employer must submit complete remittance reports to the SEIU Pension Fund with the employer's contributions and that the remittance report must contain the names of each covered employee and the number of compensable hours for each employee during the reporting month. Ex. 3, Sec. 3.1. Pursuant to the CBAs and the Collection Policy, remittance reports are due by the 15th day of the month following the month for which contributions are due and are delinquent if received thereafter. Exs. 1 & 2, Sec. 26.3; Ex. 4, Sec. 2.1.

23.    Section 2 of the Collection Policy states that "[i]f the Fund Office has not received complete and correct remittance report(s) necessary to determine the amounts owed by the

Employer, the Fund Office shall estimate the contributions due based on the most recent remittance report submitted to the Fund, payroll information, or other basis as reasonably determined by the Fund, and the Employer shall be deemed delinquent in its contributions in that amount on a monthly basis, as a minimum, in any subsequent legal action." Ex. 4, Sec. 2.

24.     Section 4 of SEIU Pension Fund's Trust Agreement and Section 5 of the Collections Policy both provide that the SEIU Pension Fund may audit any contributing employer for the purpose of ensuring that such employer has remitted the appropriate amount of contributions to the Pension Fund. Ex. 3, Sec. 4; Ex. 4, Sec. 5.

25.     Section 3.2 of the Trust Agreement and Section 2 of the Collection Policy provide that an employer delinquent in its contribution obligations to the SEIU Pension Fund and the subject of a collection lawsuit is liable for interest at the rate of ten percent (10%) per annum, liquidated damages at the greater of the interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions, and attorneys' fees and costs. Ex. 3, Sec. 3.2; Ex. 4, Sec. 2.

26.     Pursuant to the Pension Protection Act of 2006, 29 U.S.C. § 1085 et seq. ("PPA"), the SEIU Pension Fund was determined to be in critical status for the plan years beginning January 1, 2009, January 1, 2010, January 1, 2011, January 1, 2012, January 1, 2013, January 1, 2014, January 1, 2015, January 1, 2016, and January 1, 2017. Participating employers in the Fund were notified of this status via letters sent April 30, 2009, April 30, 2010, April 30, 2011, April 30, 2012, April 30, 2013, April 28, 2014, April 28, 2015, April 28, 2016, April 28, 2017, April 28, 2018, and April 29, 2019. Copies of these letters are attached as Plaintiffs' Exhibit 5.

27.     For plans in critical status, the PPA requires that all contributing employers pay to the plan a surcharge to help correct its financial situation. The amount of the surcharge is equal to a percentage of the amount an employer is otherwise required to contribute to the plan. For the

SEIU Pension Fund, a five percent (5%) surcharge was applicable in the initial critical year (2009), and a ten percent (10%) surcharge was applicable in 2010 and for each succeeding plan year thereafter in which the plan is in critical status, until the bargaining parties agree to a collective bargaining agreement that implements the supplemental contribution schedules in the Rehabilitation Plan adopted by the SEIU Pension Fund or the Default Schedule is imposed on the participating employer. Participating employers were notified of the Rehabilitation Plan adopted by the SEIU Pension Fund in November 2009. A true and complete copy of this letter is attached as Plaintiffs' Exhibit 6.

28. Pursuant to the Fund's Rehabilitation Plan, in June 2010 the Default Schedule of supplemental contributions was imposed upon Defendants. As such, as of June 2010, Defendants were obligated to contribute an additional 21.3% of their underlying contributions as supplemental contributions. This rate increased to 33.7% as of June 1, 2011, 47.4% as of June 1, 2012, and 62.5% as of June 1, 2013. The 62.5% supplemental rate remains in effect.

29. Defendants have failed to remit certain contractually required reports and contributions and have failed to pay certain interest charges, liquidated damages, and PPA supplemental contributions owed to the SEIU Pension Fund for the period of April 2017 through July 2019.

30. Further, in December of 2017, the SEIU Pension Fund completed payroll audits of Defendants for the period of 2015 through 2016. The audits revealed that the Defendants owe additional contributions, interest, and liquidated damages to the SEIU Pension Fund. While contributions remain unpaid, interest continues to accrue on these delinquent contributions and audit fees have been assessed pursuant to the Fund's governing documents. True and complete copies of the audits are attached as Plaintiffs' Exhibit 7.

## COUNT I

### AAKASH, Inc. d/b/a Park Central Care and Rehabilitation Center

31.     Plaintiffs reallege and incorporate Paragraphs 1 through 30.

32.     This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145.

33.     Defendant AAKASH is obligated, pursuant to the CBAs, to provide remittance reports and contributions to the SEIU Pension Fund on behalf of its covered employees.  AAKASH has failed and refused to fulfill its contractual obligations and owes reports and contributions (including PPA supplemental contributions) for the period from April 2017 through April 2019.  AAKASH's failure to timely submit reports and contributions has resulted in the assessment of interest and liquidated damages pursuant to ERISA and the Fund's governing documents.

34.     Specifically, AAKASH has failed to remit reports for the period of April 2017 through December 2019. Accordingly, the Fund estimated the total amounts owed for this period. For the period April 2017 through December 2019, AAKASH owes an estimated $82,786.28 in contributions, $11,172.88 in interest (calculated through January 20, 2020), and $17,345.60 in liquidated damages. Amounts owed for this period were estimated using the hours reported for March 2017.

35.     Additionally, pursuant to the Trust Agreement, the Fund conducted a payroll audit of AAKASH for the calendar years 2015 through 2016. The audit revealed that AAKASH underreported the hours compensated for its covered employees for a number of months in 2015 and 2016.  As a result, AAKASH owes additional contributions in the amount of $9,156.83, interest in the amount of $5,688.11 (calculated through August 29, 2019), $5,688.11 in liquidated

damages, a testing fee in the amount of $732.34, and $5,723.02 in PPA supplemental contributions for the calendar years 2015 and 2016. *See* Ex. 7.

36.    In total, AAKASH owes $138,293.16 in contributions (including PPA supplemental contributions), interest, audit fees and liquidated damages for the period of January 2015 through December 2019. Interest continues to accrue on all unpaid amounts until the date that they are actually received by the Fund.

37.    Prior to commencing this lawsuit, the SEIU Pension Fund sent several letters and attempted to contact AAKASH in efforts to obtain the outstanding contributions, interest, liquidated damages and PPA surcharges from AAKASH. AAKASH continues to refuse to make payment on the amounts due. There is little prospect that, lacking judicial compulsion, AAKASH will satisfy its obligations to the SEIU Pension Fund, and pay the delinquent and unpaid contributions, liquidated damages and interest due to the SEIU Pension Fund.

38.    AAKASH's continued failure to submit contributions have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the SEIU Pension Fund, endangered the eligibility of covered members' pension benefits, and other harm. AAKASH's refusal to live up to their obligations creates an atmosphere in the industry that encourages other employers to do the same.

39.    Under Section 502(g) of ERISA, Plaintiffs are entitled to recover all costs of this action from AAKASH, including reasonable attorneys' fees and court costs.

40.    As alter egos of Defendant AAKASH, Defendants NADHI, SAGAR, and KAYAL are jointly and severally liable for the remittance reports and amounts owed by AAKASH pursuant to the CBA, ERISA, and the Fund's governing documents.

## COUNT II

**KAYAL, Inc. d/b/a Bay Point Care and Rehabilitation Center**

41.     Plaintiff's reallege and incorporate Paragraphs 1 through 40.

42.     This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145.

43.     Defendant KAYAL is obligated, pursuant to the CBA, to provide remittance reports and contributions to the SEIU Pension Fund on behalf of its covered employees.  KAYAL has failed and refused to fulfill its contractual obligations and owes reports and contributions for the period of April 2017 through July 2019. KAYAL's failure to timely submit reports and contributions has resulted in the assessment of interest and liquidated damages pursuant to ERISA and the Fund's governing documents.

44.     Specifically, KAYAL has failed to remit reports for the period of January 2018 through December 2019. Accordingly, the Fund estimated the total amounts owed for this period. For the period of April 2017 through December 2019 KAYAL owes an estimated $97,435.58 in contributions, $12,338.80 in interest (calculated through January 20, 2020), and $21,113.09 in liquidated damages. Because KAYAL failed to submit reports for the months of January 2018 through December 2019, amounts due for this period are based on reported hours for December 2017.

45.     Additionally, pursuant to the Trust Agreement, the Fund conducted a payroll audit of KAYAL for the calendar years 2015 through 2016. The audit revealed that KAYAL underreported the hours worked by its covered employees for a number of months in 2015 and 2016.  As a result, KAYAL owes additional contributions in the amount of $12,985.91, interest in the amount of $7,857.22 (calculated through August 29, 2019), $7,857.22 in liquidated damages,

a testing fee in the amount of $732.34, and $8,116.20 in PPA supplemental contributions for the calendar years 2015 and 2016. *See* Ex. 7.

46.    In total, KAYAL owes $168,436.35 in contributions, interest, audit fees, and liquidated damages for the period of January 2015 through December 2019. Interest continues to accrue on all unpaid amounts until the date that they are actually received by the Fund.

47.    Prior to commencing this lawsuit, the SEIU Pension Fund sent several letters and attempted to contact KAYAL in efforts to obtain the outstanding contributions, interest, liquidated damages and PPA surcharges from KAYAL. KAYAL continues to refuse to make payment on the amounts due. There is little prospect that, lacking judicial compulsion, KAYAL will satisfy its obligations to the SEIU Pension Fund, and pay the delinquent and unpaid contributions, liquidated damages and interest due to the SEIU Pension Fund.

48.    KAYAL's continued failure to submit contributions have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the SEIU Pension Fund, endangered the eligibility of covered members' pension benefits, and other harm. KAYAL's refusal to live up to their obligations creates an atmosphere in the industry that encourages other employers to do the same.

49.    Under Section 502(g) of ERISA, Plaintiffs are entitled to recover all costs of this action from KAYAL, including reasonable attorneys' fees and court costs.

50.    As alter ego corporations, Defendants NADHI, SAGAR, AAKASH, and KAYAL are jointly and severally liable for the remittance reports and amounts owed by KAYAL pursuant to the CBA, ERISA, and the Fund's governing documents.

## COUNT III

### NADHI, Inc. d/b/a Gateway Care and Rehabilitation Center

51.     Plaintiff's reallege and incorporate Paragraphs 1 through 50.

52.     This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145.

53.     Defendant NADHI is obligated, pursuant to the CBA, to provide remittance reports and contributions to the SEIU Pension Fund on behalf of its covered employees.  NADHI has failed and refused to fulfill its contractual obligations and owes reports and contributions for the period of April 2017 through December 2019. NADHI's failure to timely submit reports and contributions has resulted in the assessment of interest and liquidated damages pursuant to ERISA and the Fund's governing documents.

54.     Specifically, NADHI has failed to remit reports for the period of January 2018 through December 2019. Accordingly, the Fund estimated the total amounts owed for this period. For the period of April 2017 through December 2019 NADHI owes an estimated $86,923.44 in contributions, $11,821.88 in interest (calculated through January 20, 2020), and $18,249.91 in liquidated damages. Because NADHI failed to submit reports for the months of January 2018 through December 2019, amounts due for this period are based on reported hours for December 2017.

55.     Additionally, pursuant to the Trust Agreement, the Fund conducted a payroll audit of NADHI for the calendar years 2015 through 2016. The audit revealed that NADHI underreported the hours worked by its covered employees for a number of months in 2015 and 2016. As a result, NADHI owes additional contributions in the amount of $14,181.46, interest in the amount of $8,435.53 (calculated through August 29 2019), $8,435.53 in liquidated damages, a testing fee in the amount of $732.34, and $8,863.41 in PPA supplemental contributions for the calendar years 2015 and 2016. *See* Ex. 7.

56.     In total, NADHI owes $157,643.50 in contributions, interest, audit fees, and liquidated damages for the period of January 2015 through December 2019. Interest continues to accrue on all unpaid amounts until the date that they are actually received by the Fund.

57.     Prior to commencing this lawsuit, the SEIU Pension Fund sent several letters and attempted to contact NADHI in efforts to obtain the outstanding contributions, interest, liquidated damages and PPA surcharges from NADHI. NADHI continues to refuse to make payment on the amounts due. There is little prospect that, lacking judicial compulsion, NADHI will satisfy its obligations to the SEIU Pension Fund, and pay the delinquent and unpaid contributions, liquidated damages and interest due to the SEIU Pension Fund.

58.     NADHI's continued failure to submit contributions have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the SEIU Pension Fund, endangered the eligibility of covered members' pension benefits, and other harm. NADHI's refusal to live up to their obligations creates an atmosphere in the industry that encourages other employers to do the same.

59.     Under Section 502(g) of ERISA, Plaintiffs are entitled to recover all costs of this action from NADHI, including reasonable attorneys' fees and court costs.

60.     As alter ego corporations, Defendants NADHI, SAGAR, AAKASH, and KAYAL are jointly and severally liable for the remittance reports and amounts owed by NADHI pursuant to the CBA, ERISA, and the Fund's governing documents.

## COUNT IV

### SAGAR, Inc. d/b/a La Mariposa Care and Rehabilitation Center

61.     Plaintiff's reallege and incorporate Paragraphs 1 through 60.

62.     This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§

1132(a)(3) and 1145.

63.     Defendant SAGAR is obligated, pursuant to the CBA, to provide remittance reports and contributions to the SEIU Pension Fund on behalf of its covered employees. SAGAR has failed and refused to fulfill its contractual obligations and owes reports and contributions for the period of April 2017 through July 2019. SAGAR's failure to timely submit reports and contributions has resulted in the assessment of interest and liquidated damages pursuant to ERISA and the Fund's governing documents.

64.     Specifically, SAGAR has failed to remit reports for April 2017 and September 2017 through December 2019. Accordingly, the Fund estimated the total amounts owed for this period. For the period of April 2017 through December 2019, SAGAR owes a total of $79,561.37 in contributions, $9,830.86 in interest (calculated through January 16, 2020), and $17,129.36 in liquidated damages. Because SAGAR failed to submit reports for the months of April 2017 and September 2017 through December 2019, amounts due for these periods are based on reported hours for March 2017 and August 2017, respectively.

65.     Additionally, pursuant to the Trust Agreement, the Fund conducted a payroll audit of SAGAR for the calendar years 2015 through 2016. The audit revealed that SAGAR underreported the hours worked by its covered employees for a number of months in 2015 and 2016. As a result, SAGAR owes additional contributions in the amount of $8,744.62, interest in the amount of $5,506.85 (calculated through August 29, 2019), $5,506.85 in liquidated damages, a testing fee in the amount of $732.34, and $5,465.39 in PPA supplemental contributions for the calendar years 2015 and 2016. *See* Ex. 7.

66.     In total, SAGAR owes $132,713.73 in contributions, interest, audit fees, and liquidated damages for the period of January 2015 through December 2019. Interest continues to accrue on all unpaid amounts until the date that they are actually received by the Fund.

67.     Prior to commencing this lawsuit, the SEIU Pension Fund sent several letters and attempted to contact SAGAR in efforts to obtain the outstanding contributions, interest, liquidated damages and PPA surcharges from SAGAR. SAGAR continues to refuse to make payment on the amounts due. There is little prospect that, lacking judicial compulsion, SAGAR will satisfy its obligations to the SEIU Pension Fund, and pay the delinquent and unpaid contributions, liquidated damages and interest due to the SEIU Pension Fund.

68.     SAGAR's continued failure to submit contributions have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the SEIU Pension Fund, endangered the eligibility of covered members' pension benefits, and other harm. SAGAR's refusal to live up to their obligations creates an atmosphere in the industry that encourages other employers to do the same.

69.     Under Section 502(g) of ERISA, Plaintiffs are entitled to recover all costs of this action from SAGAR, including reasonable attorneys' fees and court costs.

70.     As alter ego corporations, Defendants NADHI, SAGAR, AAKASH, and KAYAL are jointly and severally liable for the remittance reports and amounts owed by SAGAR pursuant to the CBA, ERISA, and the Fund's governing documents.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.     Declare that Defendants are delinquent in remitting owed contributions, interest, liquidated damages, audit fees and PPA supplemental contributions to the SEIU Pension Fund pursuant to the CBAs;

2.      Declare that Defendants are delinquent in submitting remittance reports for certain months from April 2017 through December 2019 and order Defendants to remit all unpaid contributions and resulting interest and liquidated damages corresponding to those outstanding reports;

3.      Enter judgment against all Defendants, jointly and severally, in the amount of $131,441.62 pursuant to the audit conducted for the calendar years 2015 and 2016;

4.      Enter judgment against all Defendants, jointly and severally, in the amount of $465,945.12, in unpaid contributions, interest, and liquidated damages for the period of April 2017 through December 2019;

5.      Enter judgment for Plaintiffs against all Defendants, jointly and severally, for attorneys' fees and costs, as required by the CBAs, the Trust Agreement, and Section 502(g) of ERISA;

6.      Enter a permanent injunction requiring the Defendants to timely file their remittance reports and to pay all contributions as they become due and owing to the SEIU Pension Fund in the future;

7.      Retain jurisdiction in this case pending compliance with its Order; and

8.      Grant such relief as the Court may deem appropriate.

Respectfully submitted,


    /s/   Olga M. Thall
Olga M. Thall (DC Bar No. 1016248)
Mooney, Green, Saindon, Murphy
  & Welch, P.C.
1920 L Street, N.W. Suite 400
Washington, D.C.  20036
(202) 783-0010
omthall@mooneygreen.com
Dated: April 13, 2020                              *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)

I hereby certify that on this 13th day of April 2020, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, AUDIT TESTING FEES, INJUNCTIVE RELIEF, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

Respectfully submitted,


__/s/__Olga M. Thall_____
Olga M. Thall